UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGELA DE JESUS-CONCEPCION,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Civil Action No. 17-12152 (MCA)<br><br>OPINION |

## I. INTRODUCTION

This matter has been opened to the Court by Petitioner Angela de Jesus-Concepcion's filing of a motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. (ECF No. 1.) Respondent, the United States of America, opposes the motion. (ECF No. 6.) Petitioner also filed a motion to expedite the Court's decision. (ECF No. 9.) For the reasons set forth below, Petitioner's § 2255 motion will be denied and a certificate of appealability shall not issue. Petitioner's motion to expedite will be dismissed as moot.

## II. FACTUAL BACKGROUND

On direct appeal, the Court of Appeals for the Third Circuit summarized Petitioner's underlying criminal proceeding as follows:

> De Jesus–Concepcion was arrested on March 17, 2012, when she attempted to reenter the United States through the Newark, New Jersey, Airport using a false passport in the name of Isis Carolin Pichardo, a name she also fraudulently signed to her customs declaration. United States Customs and Border Protection ("CBP") officers identified de Jesus–Concepcion for inspection when, as part of routine screening, they discovered that the passport on which she was travelling had been issued under two different applications with pictures of different women. After detaining her,

> the officers checked her fingerprints in an immigration database and confirmed her true identity, which did not match her passport and customs declaration form.
>
> De Jesus–Concepcion had also obtained a false driver's license and Certificate of Naturalization with Ms. Pichardo's information and de Jesus–Concepcion's photograph. She had used those documents to apply for the false passport by claiming that her prior passport had been lost. De Jesus–Concepcion wanted the false documents for international travel because she was not a U.S. citizen and was in this country illegally. She had been denied legal permanent residency, and she had already been ordered to depart the United States. As early as 1997, she had been arrested and placed into removal proceedings. Subsequently, when her application for legal permanent residency was denied in 2005, the notice informed her that "[i]f you fail to depart from the United States, proceedings will be instituted to enforce your departure." (App. 1013.)
>
> An indictment was handed down charging de Jesus–Concepcion with false representation of U.S. citizenship, in violation of 18 U.S.C. § 911 (Count One); use of a passport secured by false statement, in violation of 18 U.S.C. § 1542 (Count Two); and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Count Three). After a jury trial, she was convicted of all three counts and sentenced to 36 months' imprisonment and three years' supervised release. She timely appealed.

*United States v. de Jesus–Concepcion*, 652 F. App'x 134, 137-38 (3d Cir. 2016). On June 16, 2016, the Third Circuit denied Petitioner's appeal and affirmed both her conviction and sentence. *See id.* at 142. The United States Supreme Court denied Petitioner's request for a writ of certiorari. *See de Jesus-Concepcion v. United States*, 137 S. Ct. 519 (2016).

Petitioner filed the instant § 2255 application on November 15, 2017. (ECF No. 1, at 22-23.) Respondents submitted their answer opposing the motion. (ECF No. 6.) On June 12, 2019, Petitioner filed a motion to expedite the Court's decision. (ECF No. 9.)

### III. **LEGAL STANDARD**

A motion to vacate, set aside, or correct a sentence of a person in federal custody, pursuant to 28 U.S.C. § 2255, provides a prisoner relief if "the sentence was imposed in violation

2

of the Constitution or laws of the United States," if "the court was without jurisdiction to impose such sentence," or if "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). When considering a § 2255 motion, a district court "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015) (quoting *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005)). Additionally, a district court must hold an evidentiary hearing on the motion if "the files and records do not show conclusively that [the movant] was not entitled to relief." *Id.* (quoting *Solis v. United States*, 252 F.3d 289, 294 (3d Cir. 2001) (alteration in original)).

## IV. ANALYSIS

### a. Ineffective Assistance of Counsel

In her first ground for relief, Petitioner argues her trial counsel was ineffective for failing to present certain mitigating evidence. (ECF No. 3, at 6-8.) Specifically, Petitioner contends her trial counsel was "compelled" by the Government, via a motion to suppress, to exclude the following evidence at trial: 1) Petitioner's father died from terminal cancer prior to her arrest; 2) Petitioner's son had an incurable illness; 3) Petitioner's mother was handicapped and in poor health; 4) Petitioner faced deportation if convicted; 5) Petitioner's "real relationship" with witness Isis Pichardo "which would have served to impeach [Ms. Pichardo's] testimony"; 6) Isis Pichardo's "actual involvement in the case"; and 7) the "existence of a conspiracy" between Isis Pichardo and Lucia Pichardo. (*Id.* at 6-7.) Petitioner argues that if the jury had been provided with this evidence, the verdict in the case would have been more favorable. (*Id.* at 7.)

In reply, the Government submits that only the evidence regarding Petitioner's son and her possible deportation were prohibited evidence at trial. (ECF No. 6, at 20-24.) The

3

Government states that five other topics Petitioner enumerates were not expressly barred by the Court, although defense counsel was cautioned against introducing evidence for the purpose of jury nullification. (*Id.*) The Government contends that Petitioner cannot establish her trial counsel was ineffective for abiding by the trial court's evidentiary rulings. The Government also submits that Petitioner fails to demonstrate that even if the other five topics were introduced at trial, that the result of the proceeding would have been different. (*Id.* at 26-34.)

Prior to Petitioner's trial, the District Court did prohibit the introduction of evidence regarding Petitioner's son's medical condition and evidence regarding her potential deportation if convicted. (ECF No. 6-2, at 47, 67.) However, the District Court never expressly prohibited the introduction of evidence concerning the health of Petitioner's parents or the nature of Petitioner's relationship with Ms. Pichardo. (*Id.* at 44-67.) The Court did instruct defense counsel not to pursue arguments intended to invite jury nullification. (*Id.* at 47.) Defense counsel agreed that she would not. (*Id.*) Ultimately, no evidence concerning Petitioner's parents' health was introduced at trial, but defense counsel did elicit substantial testimony from Ms. Pichardo regarding the nature of her relationship with Petitioner. (*Id.* at 92-103; ECF No. 6, at 21-22.)

The Sixth Amendment guarantees the accused the "right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the *effective* assistance of counsel, and a defendant may be deprived of that right if their attorney fails to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated in *Strickland*. *See id.* at 687. Under the first *Strickland* prong, a movant must demonstrate that "counsel's representation fell below an

objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. Under the second *Strickland* prong, a movant must demonstrate a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *See id.* at 694. In determining whether the Petitioner suffered prejudice, a court "must consider the totality of the evidence before the judge or jury" as a verdict that is "only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 695-96; *see also United States v. Parker*, 621 F. App'x 109, 111 (3d Cir. 2015) ("To make this [prejudice] determination, we must consider the totality of the evidence at trial: The greater the support for a verdict in the record, the less likely it is that the verdict was affected by errors of counsel."). Importantly, "[a]n assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like." *Strickland*, 466 U.S. at 695.

Here, Petitioner's ineffective assistance of counsel claim is without merit. First, as the Government emphasizes, defense counsel was not deficient for abiding by the District Court's evidentiary ruling. Under Supreme Court precedent, "[a]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." *United States v. United Mine Workers*, 330 U.S. 258, 293 (1947). The fact that defense counsel did not introduce the impermissible evidence of Petitioner's son's health and her possible deportation does not demonstrate that defense counsel acted unreasonably under "prevailing professional norms" or that her performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Rather, Supreme Court

precedent dictates that the abiding norm for attorneys is to obey a court's orders unless or until that order is reversed.

Second, although Petitioner alleges the nature of her relationship with Ms. Pichardo was not presented at trial, defense counsel extensively cross-examined Ms. Pichardo about her relationship with Petitioner. (ECF No. 6-2, at 92-103.) Indeed, this was the majority of the testimony elicited from Ms. Pichardo by defense counsel. (*Id.*) In her § 2255 motion, Petitioner only provides the bare allegation that testimony regarding her "real relationship" with Ms. Pichardo and testimony regarding "the existence of a conspiracy" between Ms. Pichardo and her mother should have been introduced to impeach Ms. Pichardo. (ECF No. 3, at 6-7.) However, "bald assertions and conclusory allegations" are insufficient to establish an ineffective assistance of counsel claim. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). Absent additional information, Petitioner has not demonstrated that trial counsel was deficient for failing to elicit certain testimony regarding her relationship with Ms. Pichardo, especially given that defense counsel thoroughly cross-examined Ms. Pichardo on this general issue.

Finally, Petitioner is also unable to demonstrate that she suffered any prejudice. The totality of the evidence against Petitioner was overwhelming. At trial, customs and border patrol agent Richard Moses testified that after screening Petitioner, she provided him with a passport and a New Jersey driver's license each depicting her photo, but each bearing the name Isis Pichardo. *See United States v. de Jesus-Concepcion*, Crim. No. 13-00084, ECF No. 53, at 35-37 (D.N.J.). When Petitioner was fingerprinted, Officer Moses discovered that Petitioner was not Isis Pichardo, but rather, Angela de Jesus-Concepcion. *Id.* at 36-37. Evidence was presented that Petitioner was born in, and a citizen of, the Dominican Republic and not the United States. *See id.*, ECF No. 62, at 18-28. An audio recording of Petitioner admitting to this fact during an

immigration hearing was also introduced. (ECF No. 6-2, at 31.) Additionally, evidence was introduced that Petitioner used Isis Pichardo's social security number and birth date to obtain a Certificate of Naturalization and a New Jersey driver's license in Ms. Pichardo's name. *See de Jesus-Concepcion*, Crim. No. 13-00084, ECF No. 62, at 163-169 & ECF No. 53, at 90-91. Accordingly, as the District Court pointed out, "the record is copious with evidence, direct and circumstantial, of [Petitioner's] guilt on each count." *See id.*, ECF No. 62, at 163-169. Given the overwhelming amount of evidence against Petitioner, any evidence defense counsel may have introduced about Petitioner's parent's health or her "real" relationship with Ms. Pichardo would have not changed the outcome of her trial or whether she was guilty of false representation of U.S. citizenship, use of a passport secured by false statement, or aggravated identity theft to a reasonable probability. Accordingly, Petitioner is not entitled to relief on this claim.

### b. Sentencing Challenge

In Petitioner's second ground for relief, she argues that the District Court failed to credit the time she served on house arrest towards her prison sentence. (ECF No. 3, at 8-12.) After Petitioner was convicted at trial, the Government moved for Petitioner to be immediately detained. *See de Jesus-Concepcion*, Crim. No. 13-00084, ECF No. 51 at 92. Petitioner requested to remain on bond until her sentencing date. *See id.* at 96. The District Court ultimately placed Petitioner under house arrest and indicated that her time may be credited towards her sentence. *See id.* at 101. At her sentencing hearing, Petitioner ultimately received thirty-six months imprisonment. *See id.*, ECF No. 70, at 49. In the instant motion, Petitioner argues the District Court violated her rights by failing to credit her for the time she spent on home confinement. (ECF No. 3, at 8-9.)

7

At the outset, this Court notes that Petitioner has already completed her thirty-six month sentence. (ECF No. 9, at 1.) Under Article III, Section 2 of the United States Constitution, there must exist a live case or controversy where "the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision" in order for a federal court to retain jurisdiction. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Generally, when a habeas petitioner challenges her underlying conviction and is released from confinement during the pendency of her habeas application, federal courts will presume that "a wrongful criminal conviction has continuing consequences" that are sufficient to satisfy the injury requirement. *See id.* at 8. However, when a petitioner attacks a now-expired sentence, the injury requirement is not presumed, and the petitioner must demonstrate "some concrete and continuing injury other than the now-ended incarceration or parole." *Id.* at 7; *see also United States v. Kissinger*, 309 F.3d 179, 180 (3d Cir. 2002). Here, Petitioner has not alleged any continuing collateral consequences stemming from her sentencing claim. *See Spencer*, 523 U.S. at 14 (holding that it is the petitioner's burden to demonstrate any continuing injuries or collateral consequences); *see also Kissinger*, 309 F.3d at 181. Without any allegation by Petitioner that she suffers from any continuing injuries or collateral consequences, she has not satisfied Article III's case-and-controversy requirement. *See Smith v. Danberg*, 928 F.Supp.2d 812, 812 (D. Del. 2013) (citing *Spencer*, 523 U.S. at 7).

Moreover, a defendant is only considered detained "when [they are] committed to the custody of the Attorney General." *See Reno v. Koray*, 515 U.S. 50, 57 (1993). Defendants who are released on bail, even under restrictive conditions such as home confinement, are deemed released. *See West v. Warden Fort Dix FCI*, 740 F. App'x 237, 238 (3d Cir. 2018) (citing *Koray*, 515 U.S. at 65). A defendant who has been released on home confinement is not entitled to

8

*2 (D.N.J. Feb. 1, 2016) (quoting *United States v. DeRewal*, 10 F.3d 100, 105, n.4 (3d Cir. 1993)); *see also United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) ("issues resolved in a prior direct appeal will not be reviewed again by way of § 2255 motion"). Here, Petitioner's argument regarding jail credit for time served on house arrest has already been raised on direct appeal. Petitioner is not entitled to relitigate the same claim again in the instant § 2255 motion. Accordingly, Petitioner is not entitled to relief on this claim.

### c. Motion to Expedite

On June 12, 2019, Petitioner also filed a motion to expedite the Court's decision. (ECF No. 9.) Since Petitioner's § 2255 motion is being denied for the reasons stated above, her motion to expedite will be dismissed as moot.

### d. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003). Here, reasonable jurists would not disagree with the Court's decision. Accordingly, a certificate of appealability shall issue.

## V. CONCLUSION

For the reasons explained in this Opinion, Petitioner's § 2255 motion will be denied and her motion to expedite is also denied. The Court declines to issue a certificate of appealability. An appropriate Order follows.

Dated: aug 29/19

_____
Madeline Cox Arleo, District Judge
United States District Court